# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YANIRA BENITEZ BARRETO, | : | Civil No. 1:21-CV-01390 |
| Plaintiff, | : | |
| v. | : | |
| ANGEL DIAZ, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court is the motion for summary judgment filed by Defendant Officer Angel Diaz ("Officer Diaz") on December 30, 2022. (Doc. 28.) In this case in which Plaintiff Yanira Benitez Barreto ("Benitez") has alleged a deprivation of her civil rights, Officer Diaz seeks summary judgment on Benitez's claims for (i) assault and battery, (ii) excessive force, (iii) false arrest/false imprisonment, and (iv) malicious prosecution. (Doc. 29.) For the reasons that follow, the court will grant Officer Diaz's motion.

## PROCEDURAL HISTORY

Benitez filed a complaint on July 19, 2021, in the Pennsylvania Court of Common Pleas in Dauphin County against Officer Diaz and Defendant City of Harrisburg ("City of Harrisburg"). (Doc. 1, pp. 9–21.)[1] Defendants filed notice of removal on August 10, 2021. (*Id.* at 1.)

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

1

On August 11, 2021, Defendants filed a partial motion to dismiss. (Doc. 2.) On June 29, 2022, the City of Harrisburg was dismissed by stipulation of the parties. (Doc. 20.) That same day, the court entered an order approving Defendants' withdrawal of their motion to dismiss, to which Benitez stipulated. (Doc. 22.)

On July 19, 2022, Officer Diaz, who is the sole remaining defendant, filed an answer to Benitez's complaint. (Doc. 23.) Then on December 30, 2022, he filed the instant motion. (Doc. 28.) The motion was briefed and became ripe on March 13, 2023. (Docs. 29, 35, 36, 38.)

## FACTUAL BACKGROUND[2]

The factual circumstances surrounding this case took place on or about June 2, 2019, when Benitez was at a party at a house in Harrisburg, Pennsylvania.

---

[2] Any additional factual recitation that is necessary for the discussion of each specific issue is included in the Discussion section of this memorandum. In considering the instant motion for summary judgment, the court relied on the uncontested facts, or where the facts were disputed, viewed the facts and deduced all reasonable inferences therefrom in the light most favorable to the nonmoving party in accordance with the relevant standard for deciding a motion for summary judgment.

In addition, the court notes that Defendant filed a motion to strike Benitez's addendum to her statement of facts. (Doc. 39.) The addendum consists of an expert rebuttal report. (Doc. 37.) This rebuttal report was untimely as to the instant motion for summary judgment. (Doc. 31.) The court granted Benitez's motion for an extension of time to file a response and brief in opposition to the motion for summary judgment. (*Id.*) Per that order, Benitez's filings were due February 26, 2023. Benitez untimely filed her brief and response on February 27, 2023 and the addendum on March 6, 2023. (Doc. 37.) Because Benitez's addendum is untimely for purposes of summary judgment, the court will grant Officer Diaz's motion and strike Benitez's addendum.

(Doc. 28-1, p. 5.) At 1:20 a.m., Officer Diaz and Officer Christopher Tenney ("Officer Tenney") responded to a noise complaint they received about the party. (Doc. 28, ¶¶ 1–2.)

Initially, from outside the house, Officer Diaz attempted to obtain identification from the homeowner, Joselyn Marie Torres-Santiago ("Torres"). (Doc. 35, ¶ 5.i.) Officer Diaz needed her identification to give her a warning or ticket for the noise complaint. (Doc. 28, ¶ 4.)[3]

Torres retrieved her identification but did not provide it to Officer Diaz. (Doc. 35, ¶ 5.i.) Instead, with three of her party guests apparently between her and Officer Diaz, Torres "held the ID out [sic] the guests' shoulders so he could read it" while one of her fingers covered the photograph on the identification. (*Id.*; Doc. 28-2, p. 50.)[4] She refused to let Officer Diaz take her identification. (Doc. 35, ¶ 5.ii.) When Officer Diaz told Torres that he needed to take the identification to cite her for a summary noise ordinance violation, "she declined and shook her head no . . . then [she] retreated from the doorway back into her home." (*Id.*)

---

[3] Benitez contests this fact, but the citation to the record which she provides does not contradict this fact. (*See* Doc. 35, ¶ 4; Doc. 28-2, p. 50.) As a result, the court finds that the fact stated above is established.

[4] Benitez asserts that Torres "did not appear to be trying to conceal anything about her ID." (Doc. 35, ¶ 5.iii.) The portion of the record that Benitez cites does not support this assertion. As a result, the court finds that the fact stated above is established.

Officer Diaz testified that people stood in his way, obstructing his path into the home. (Doc. 35, ¶ 6.a.) According to Benitez, "[h]e told them to move so he could come into the home and when they refused he 'just pushed past them." (*Id.*) One of the men Officer Diaz pushed then bumped into Benitez, who fell over. (*Id.*; Doc. 28-2, p. 52.)[5]

Once inside the house, Officer Diaz testified that Torres' guests formed a wall to keep Torres away from him and Officer Tenney. (Doc. 28-2, p. 47.) He stated, "[a]t that point they along with some other individuals in the residence started to surround myself and Officer Tenney in the household and encroaching upon our space which is a huge safety issue and refusing to get back after giving numerous commands to move back." (*Id.*) Officer Diaz asserts that "the people in the group did not obey that command and continued to surround the two officers and shout at them." (Doc. 28, ¶ 8.)

Benitez contests this recounting. She argues, citing two short videos that recorded the incident, that Officer Diaz did not repeatedly order the group to get back. (Doc. 35, ¶ 7; Def. Ex. J; Def. Ex. K.) She also argues that Officer Diaz

---

[5] Benitez asserts that Officer Diaz testified that he pushed two men, and both fell into Benitez. (Doc. 36, ¶ 6.a.) But the portion of the record to which Benitez cites only refers to one man, Afred, being pushed back and bumping into Benitez, who then fell over. (Doc. 28-2, p. 52.) As a result, the court finds that the fact stated above is established.

admitted that the video evidence did not appear to show that he and Officer Tenney were surrounded.  (Doc. 35, ¶ 8.a.; Doc. 28-2, p. 118.)[6]

Officer Diaz has a different interpretation of the video evidence.  He describes the video evidence as showing several people, including Benitez, standing in front of the officers and shouting at them. (Doc. 28, ¶ 11; Def. Ex. J; Def. Ex. K.)  The group did not comply with his instructions, and Benitez took a step toward Officer Diaz with her arm raised.  (Doc. 28, ¶ 11.)  At that point, Officer Diaz sprayed Benitez and the other people with OC spray (commonly referred to as pepper spray).  (*Id.*)

Benitez denies many of these allegations.  The only evidence that either party cites are the videos.  Having reviewed the video evidence, the court finds that Officers Diaz and Tenney were flanked by at least five people in close proximity to the officers.[7]  (Def. Exs. J and K.)  Video footage shows Officer Diaz saying at moderate volume "get the f--- back."  Not heeding his instruction, Benitez stepped quickly towards Officer Diaz rapidly raising her finger to his face.  Officer Diaz loudly repeated "get the f--- back" and promptly sprayed Benitez and the rest of

---

[6] Officer Diaz asserted that the video was taken from the vantage of someone in the semi-circle surrounding the officers, so that the full number of people around them could not be seen from the footage.  (Doc. 35, ¶ 8.a.; Doc. 28-2, p. 118.)

[7] The videos also show at least two people further away in addition to the two people who took the videos and are out of frame.  (Def. Exs. J and K.)

the crowd with OC spray, which caused them to disperse. Then, a separate partygoer from a different direction appeared to throw a drink at the officers.

Officer Diaz asserts that, shortly thereafter, Benitez struck another officer, Officer John Rosinski, in the face with her hand. (Doc. 28, ¶ 15.) Benitez calls into question Officer Diaz's firsthand knowledge of that assault occurring. (Doc. 35, ¶ 15.) Benitez was arrested and taken to Dauphin County Prison, where she was placed in a holding cell. (Doc. 28, ¶ 16.)[8] Benitez's Dauphin County Judicial Center Detainee Personal Property Record ("Property Record") states that at 2:40 a.m., one bracelet was taken from her. (Doc. 28-3, p. 11.) In the Detainee Signature line of the Property Record, instead of a signature are the words "Too Intoxicated." (*Id.*)

At 9:55 a.m. that morning, an arraignment was held, and Benitez pleaded not guilty. (Doc. 28, ¶ 17; Doc. 35, ¶ 17.) According to the Property Record, which Benitez appears to have signed later in the day, she received all property taken from her and was released that day at 12:20 p.m. (Doc. 28-3, p. 11.)[9] Benitez

---

[8] Benitez denies this point, but it is unclear on what grounds. She does not assert contrary facts but instead provides seemingly extraneous information, such as that Officer Diaz "had given instructions to detain – to have everyone detained in handcuffs prior to me going back" and asserts that "[e]veryone was kind of rounded up out back." (Doc. 35, ¶ 16.)

[9] Benitez contests this timeline and argues that, per her criminal docket, she was not released until three days later on June 5, 2029. (Doc. 35, ¶¶ 21.a., 24, 25, 26; Doc. 28-3, pp. 5, 10.) But this single citation to one page of her criminal docket seems to be a mistake that conflicts with the rest of the available evidence and Benitez's own testimony. In light of the limited evidence

testified that she did not know how long it was until she posted bail. (Doc. 28-2, p. 13.) But once bail was posted, she was released and went straight to the UPMC hospital ("UPMC"). (*Id.* at 14.)

Benitez's UPMC medical records indicated that she was triaged by a registered nurse at 3:38 p.m. on June 2, 2019. (Doc. 38-1, p. 7.) A physician assistant treated her on June 2, 2019 at 4:16 p.m. (*Id.* at 2.) Benitez testified that this report timeline was accurate. (Doc. 28-2, p. 15.) And she was discharged from UPMC at 5:40 p.m. (*Id.* at 7.)

Then, on October 31, 2019, Benitez pleaded guilty to disorderly conduct in violation of 18 Pa. Cons. Stat. Ann. § 5503(a)(4). (Doc. 28-3, p. 6.) The arrest date for this charge was June 2, 2019. (Doc. 28-3, p. 4.)[10]

### JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.

---

to support Benitez's assertion and the significant evidence to the contrary, the court is constrained to accept Officer Diaz's timeline of events and reject that of Benitez.

[10] Benitez asserts without support that her guilty plea for disorderly conduct "was never part of the underlying charges initiated/prosecuted by [Officer] Diaz." (Doc. 35, ¶ 23.b.) But she provides no evidence to disprove Officer Diaz's assertion or the evidence of her criminal docket that her guilty plea was related to her June 2, 2019 arrest. Nor does Benitez provide any other explanation for the guilty plea.

## STANDARD OF REVIEW

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial.  Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**DISCUSSION**

## A. Assault and Battery

The conduct upon which Benitez premises her claim for assault and battery is in two parts. The first part was when Officer Diaz pushed past two people to come into Torres' home—one of whom bumped into Benitez who then fell. The second part was when Officer Diaz sprayed Benitez with OC spray.

Diaz asserts that there are no disputed issues of fact upon which a jury could conclude that he committed assault and battery. (Doc. 29, p. 2.) He asserts that, although Benitez testified that Officer Diaz pushed her, her claim fails. He asserts that Benitez's claim fails because the video evidence shows that excessive force was not used and does not permit the inference that Officer Diaz's use of force was unreasonable. (*Id.* at 4–5.) He argues that although the videos show Officer Diaz using OC spray on Benitez, they do not show him pushing her and make clear that the use of OC spray was only a defensive measure. (*Id.* at 5.)

Under Pennsylvania law, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). The Pennsylvania Supreme Court further provided that "[a] police officer may use reasonable force to prevent interference with the exercise of his authority or the

performance of his duty." *Id.* Furthermore, "[s]elf defense is a complete defense to a claim of assault and battery." *Hill v. Frazier*, 1996 WL 117441, at *3 (E.D. Pa. Mar. 11, 1996) (citing *Smith v. Lauritzen*, 356 F.2d 171 (3d Cir. 1966)).

The court finds no genuine issue of material fact as to the assault and battery claim. As an initial matter, in countering or adding to the facts recounted by Diaz, Benitez repeatedly fails to cite to the record and instead cites only to her complaint. (Doc. 36, pp. 4–5.) And many of Benitez's assertions lack any citation whatever.[11]

However, citing the deposition of Torres' mother, Marisol Santiago Santiago ("Santiago"), Benitez asserts that the police used more force than was described in Benitez's deposition. Santiago testified that the police pushed a number of people and even kicked Torres. (Doc. 36, p. 5; Doc. 35-2, p. 4–5.) While this testimony does provide a different description of the degree of force used by police when entering the home, this testimony does not assert that Officer Diaz used any force against Benitez specifically.[12]

---

[11] For example, many of Benitez's factual assertions in pages 5 and 6 of her brief in opposition lack citations. As counsel is aware, under Federal Rule of Civil Procedure 56(c), "[a] party asserting that a fact cannot be or is genuinely disputed" must support the assertion by "citing to particular parts of materials in the record."

[12] Benitez asserts that this testimony pertained to Diaz subjecting Benitez to excessive use of force. (*See* Doc. 36, p. 5.) But the testimony plainly makes clear that Santiago is referring to her daughter, Torres, who is not a plaintiff. (Doc. 35-2, p. 5.) Benitez also fails to show that Santiago was referring to Officer Diaz as the perpetrator. Santiago spoke of the offending officer as being the only one who spoke Spanish. (*See* Doc. 36, p. 5.) But she fails to support the assertion that Officer Diaz was the only Spanish-speaking officer. (*See id.*)

11

Benitez has provided no evidence to suggest that, in entering Torres' home, Officer Diaz was using anything beyond reasonable force against Benitez to prevent interference with the exercise of his authority or the performance of his duty. He was investigating a noise complaint. The subject of the complaint refused to provide him her identification and then retreated into her home. Officer Diaz pushed past the people obstructing him from doing his duty. The fact that one of them bumped into Benitez who then fell does not make Officer Diaz's conduct an assault or battery.

Neither was Officer Diaz's subsequent use of force in spraying Benitez with OC spray an assault or battery. The videos show Officers Diaz and Tenney flanked by at least five people in close proximity to the officers.[13] Video footage shows Officer Diaz saying at moderate volume "get the f--- back." Not heeding his instruction, Benitez stepped quickly towards Officer Diaz rapidly raising her finger to his face. Officer Diaz loudly repeated "get the f--- back" and promptly sprayed Benitez and the rest of the crowd with OC spray, which caused them to disperse. Then, a separate partygoer from a different direction appeared to throw a drink at the officers.

---

[13] The videos also show at least two people further away in addition to the two people who took the videos and are out of frame.

12

In light of the video evidence, the court concludes that no reasonable jury could find in Benitez's favor for her assault and battery claims. Therefore, the court will grant Officer Diaz summary judgment on this count.

**B. Excessive Force**

Benitez also brings an excessive force claim based on Officer Diaz "forc[ing] his way into the home without a warrant" and "hitting, kicking Ms. Benitez Hard, [and] spraying her closely in the eyes with a chemical agent." (Doc. 28-1, pp. 9–10; Doc. 36, pp. 11–12.)[14] The standard for such claims is the "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

Objective reasonableness is assessed under the totality of the circumstances. *Johnson v. City of Phila.*, 837 F.3d 343, 350 (3d Cir. 2016) (citation omitted). It is analyzed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* This allows for the reality that officers must often make split-second judgments amidst tense circumstances in which some amount of force may be necessary in that specific instance. *Id.*

---

[14] In supporting this claim, Benitez provides no citation to the record.

13

Benitez argues that Officer Diaz "knew at the time that he forced his way into the home without a warrant of any sort that he was not allowed to do so." (Doc. 36, p. 12.)  Benitez further argues that Officer Diaz "knew that the Fourth Amendment has 'clearly established' that a Harrisburg patrolman cannot violently force entry into a private home to gather evidence of a summary ticket for a noise violation." (*Id.*)  In presenting her arguments, Benitez does not cite to the record or any legal authority in support.  (*See id.* at 11–13.)[15]

As noted above when discussing the assault and battery claim, Benitez has not provided sufficient evidence upon which a jury could reasonably find that Officer Diaz used more force than reasonable towards her under the circumstances. Officer Diaz arrived late at night in response to a noise complaint.  At the scene, the homeowner, Torres, covered the photo on her identification card and refused to surrender it to the officers.  In her refusal, Torres was supported by her party guests who provided a human wall between her and the responding officers.  The result was that, when Torres retreated into her home, the officers pushed past the guests to enter.

With respect to Officer Diaz entering the home, Benitez has not cited any portions of the record, either in her brief in opposition or her statement of facts, to

---

[15] However, she does observe that Officer Diaz "relies upon *Williams v. City of York*, 967 F.3d 252, 258 (3d Cir. 2020), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 102 S. Ct. 2727 73 L. Ed 2d 396 (1982)." (Doc. 36, p. 11–12.)

show that Officer Diaz made contact with her or even directed any force towards her specifically. (Doc. 35, ¶¶ 1–6; Doc. 36, pp. 11–13.) Instead, her statement of facts points out that Officer Diaz admitted that he pushed past two people blocking his entry. (Doc. 35, ¶ 6.a.) Her statement of facts cites Officer Diaz's testimony, which states that one of the people he pushed fell into Benitez, who was knocked to the ground. (*Id.*; Doc. 28-2, p. 52.) Benitez further asserts that "[o]nce [Officer] Diaz pushed into the home he tried to get the homeowner so he could take her ID." (Doc. 35, ¶ 6.a.)

Upon entering Torres' home, there is no indication that Officer Diaz pushed past people for any reason other than to enter the home to obtain Torres' identification. Indeed, Benitez acknowledges that Officer Diaz "pushed *past* them." (Doc. 35, ¶ 6.a. (emphasis added).) Nor is there any evidence to suggest that, in pushing past them, Officer Diaz was attempting to push them into anyone else, Benitez or otherwise. Neither is there an allegation that Officer Diaz used more force than was required to push past the individuals. More generally, there is no allegation that Officer Diaz directed any use of force specifically against Benitez.

As to the use of OC spray, the video evidence supports Officer Diaz's explanation of what happened and not that of Benitez. The videos show Officers

15

Diaz and Tenney flanked by at least five people in close proximity to the officers.[16] Video footage shows Officer Diaz saying at moderate volume "get the f--- back." Not heeding his instruction, Benitez stepped quickly towards Officer Diaz rapidly raising her finger to his face. Officer Diaz loudly repeated "get the f--- back" and promptly sprayed Benitez and the rest of the crowd with OC spray, which caused them to disperse. Then, a separate partygoer from a different direction appeared to throw a drink at the officers.

In summary, the officers, responding to the late-night noise complaint, arrived at a party at the home of what could fairly be considered an uncooperative homeowner and partygoers who blocked their entrance. Then, in the living room, the significantly outnumbered Officer Diaz instructed them to get back. Instead, Benitez stepped toward him raising her finger to his face.

Under the totality of the circumstances, with regard to Officer Diaz entering Torres' home and pushing past the two individuals in his way, the court finds that, under the totality of the circumstances, Officer Diaz's conduct towards Benitez was objectively reasonable. Likewise, his use of OC spray under the totality of the circumstances was objectively reasonable. Thus, the court finds that no reasonable jury could find that Officer Diaz's conduct towards Benitez was not objectively

---

[16] The videos also show at least two people further away in addition to the two people who took the videos and are out of frame.

reasonable in light of the facts and circumstances confronting him. For these reasons, the court will grant Officer Diaz summary judgment on this count.

### C. False Arrest/False Imprisonment

Officer Diaz asserts that Benitez was arrested on multiple charges, which included aggravated assault, obstruction of justice, noise disturbance, and escape. (Doc. 29, p. 8; *see* Doc. 28-2, p. 14.) Pursuant to a plea agreement, Benitez pleaded guilty to disorderly conduct in violation of 18 Pa. Cons. Stat. Ann. § 5503(a)(4). (Doc. 29, p. 8; Doc. 28-3, pp. 4–7.) A person is guilty of this offense when they "create[] a hazardous or physically offensive condition by any act which serves no legitimate purpose of the [person]."

Officer Diaz points out that, to defeat Benitez's claim for false arrest, he need only show that "probable cause . . . existed as to any offense that could be charged under the circumstances." (Doc. 29, p. 8 (quoting *Johnson v. Knorr*, 477 F.3d 75, 84–85 (3d Cir. 2007)) (cleaned up).) Officer Diaz argues that the video evidence combined with Benitez's guilty plea establishes that probable cause existed for Benitez's arrest. (Doc. 29, p. 9.)

In response, Benitez presents argument without a single citation to the record. (Doc. 36, pp. 13–14.) Instead, she argues, without referencing any evidentiary support, that all of the charges that were initially brought against her were dismissed, and the charge of disorderly conduct was only later brought. (*Id.*

17

at 13.) She argues there was no plea agreement, and *Johnson* is inapplicable because probable cause was not established for any of the charges initially brought against her. She asserts that "nowhere in the record is there any evidence that Officer Diaz ever charged Ms. Benitez with summary disorderly based upon the events which transpired. (*Id.* at 14.) Benitez's implicit argument is that her later plea to a lesser charge precludes a finding that probable cause existed at the time of her initial arrest. Of note, she provides no legal authority to support this argument.

But the record clearly demonstrates that Benitez pleaded guilty to disorderly conduct, and there is no evidence to suggest that this charge was related to anything other than the incident underlying this suit. The court agrees with Officer Diaz's assessment that the video evidence shows that probable cause existed at the time of Benitez's arrest, for which Benitez could be charged under the circumstances. For that reason, and because the court is aware of no authority to suggest that Benitez's plea to a lesser charge diminishes the existence of probable cause at the time of her arrest, the court will grant summary judgment to Officer Diaz for the false arrest/false imprisonment claim.

### D. Malicious Prosecution

Although Benitez brings her claim for malicious prosecution under the Fourth and Fourteenth Amendments, she does not contest Officer Diaz's argument

that under Supreme Court precedent it should only be analyzed under the Fourth Amendment.  (Doc. 29, pp. 9–10; *see* Doc. 36, pp. 14–15.)

Officer Diaz argues that this type of claim is meant to redress the deprivation of "liberty accompanying prosecution, not prosecution itself."  (Doc. 29, p. 10 (citing *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005)).)  The alleged constitutional violation must "occur chronologically after the pressing of charges."  (*Id.* (quoting *Roberts v. Caesar's Entm't, Inc.*, 72 F. Supp. 575, 581 (E.D. Pa. 2014)).)  But "[w]hat occurred prior to the prosecution, that is, the time between arrest and the lodging of formal charges, is not a basis for a malicious prosecution claim."  (*Id.* (citing *Roberts*, 72 F.Supp. at 581).)  To constitute a violation, the seizure must result in "either pretrial custody or some onerous type of pretrial, non-custodial restrictions."  (*Id.* at 10–11 (quoting *DiBella*, 407 F.3d at 603) (cleaned up).)

To succeed on her claim, Benitez must have obtained a favorable termination of the underlying criminal matter.  *Heck v. Humphrey*, 512 U.S. 477, 484 (1994).  In *Thompson v. Clark*, the Supreme Court observed that

> "American courts described the elements of the malicious prosecution tort as follows: (i) the suit or proceeding was 'instituted without any probable cause'; (ii) the 'motive in instituting' the suit 'was malicious,' which was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and (iii) the prosecution 'terminated in the acquittal or discharge of the accused.'"

142 S. Ct. 1332, 1338 (2022) (citation omitted).

As addressed in the analysis of her false arrest/false imprisonment claim, there was probable cause for Benitez's arrest.  Further, in the present instance, Benitez's charge ended with her guilty plea to a lesser charge.  (*Id.*)  Benitez has provided no authority to support the proposition that her guilty plea does not suffice under *Heck* simply because it is different from the initial charges against her.  The prosecution did not terminate in acquittal or discharge of the accused—it terminated in her guilty plea.  For this reason, the court will grant Officer Diaz summary judgment on the malicious prosecution claim.

## CONCLUSION

For the reasons provided above, the court will grant Officer Diaz summary judgment on all counts.  An appropriate order will follow.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: September 25, 2023